NOT DESIGNATED FOR PUBLICATION

No. 120,470

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER D. WALKER,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed May 1, 2020. Affirmed.

*Kevin P. Shepherd*, Law Office of Kevin P. Shepherd, of Topeka, for appellant.

*Charles P. Bradley*, of Legal Services, Kansas Department of Revenue, for appellee.

Before HILL, P.J., BUSER and BRUNS, JJ.

PER CURIAM: Christopher D. Walker appeals from the district court's decision affirming the administrative suspension of his driver's license. A Shawnee County Sheriff's Deputy arrested Walker for suspicion of driving under the influence of alcohol following a traffic stop and he subsequently refused to take an evidentiary breath alcohol test. As a result, the Kansas Department of Revenue (KDOR) suspended Walker's driver's license. On appeal, Walker contends that substantial competent evidence does not support his arrest. In addition, he contends that the statute under which his driver's license was suspended is unconstitutional. For the reasons set forth in this opinion, we affirm the district court's decision.

1

In the early morning hours of August 31, 2017, Shawnee County Sheriff's Deputies Dalton Atzenweiler and Tyler Vaughn—who were riding together in a patrol vehicle—stopped a vehicle driven by Walker for making an improper left turn after leaving a bar. After observing the traffic violation, the officers began recording the subsequent events. It does not appear that Walker committed any additional traffic offenses after the officers saw him making the improper left turn.

After stopping in a nearby parking lot, Walker told Deputy Atzenweiler that he had dropped off some friends at the bar and was heading home. Walker produced his driver's license to the deputy and showed him a photograph of his automobile insurance card on his cellphone. However, Walker failed to present the vehicle's registration to the deputy. In speaking to Walker, Deputy Atzenweiler smelled the odor of an alcoholic beverage and noticed that Walker had bloodshot eyes.

Based on his observations, Deputy Atzenweiler requested that Walker perform several field sobriety tests. In performing the field sobriety tests, the deputy observed that Walker had poor balance and coordination. During the walk-and-turn test, Walker could not hold his heel to toe position at the beginning of the test and he stepped off the line at step seven. Moreover, Walker inappropriately turned around at the halfway point of the test. Also, during the one-leg-stand test, Deputy Atzenweiler had to explain the test to Walker twice before he began. Then, Walker dropped his foot after seven seconds and briefly lost his balance after raising it back up. Walker told Deputy Atzenweiler that the reason he struggled with the field sobriety tests was because he had broken his right leg four times and had "bl[own] his knee out."

Based on Walker's performance during the field sobriety tests, and after discussing the matter with Deputy Vaughn, Deputy Atzenweiler read the preliminary breath test

advisory to Walker. Even so, Walker refused to submit to a preliminary breath alcohol test and the deputy placed him under arrest for suspicion of driving under the influence of alcohol. After being taken to the law enforcement center, Walker also refused to take an evidentiary breath alcohol test. It is undisputed that Deputy Atzenweiler completed a DC-27 form that he read and served on Walker. The DC-27 advised Walker that his driver's license would be suspended and gave him notice of his right to file an administrative appeal.

After KDOR upheld the administrative suspension of Walker's driver's license, he filed a petition for judicial review with the district court. The district court did not conduct a formal hearing. Instead, the parties agreed to submit the case on written briefs filed with the district court. Prior to making its decision, the district court viewed the video recording of the traffic stop and field sobriety testing. The district court also reviewed the statements made by Atzenweiler in the DC-27 form.

On November 6, 2018, the district court issued a written decision in which it affirmed the administrative suspension of Walker's driver's license. In doing so, the district court noted that it had "reviewed the evidence as stipulated by the parties, which includes the agency record and a DVD of the traffic stop. The parties waived any presentation of additional evidence at trial." Thereafter, Walker filed this appeal.

ANALYSIS

Walker raises two issues on appeal. First, Walker contends that there was insufficient evidence presented to support a finding that Deputy Atzenweiler had reasonable grounds to believe he operated a motor vehicle under the influence. In particular, Walker suggests that the district court ignored evidence in the video recording which, he believes, showed that he was not impaired. Second, Walker contends that K.S.A. 2019 Supp. 8-1001(c)(2)—formerly K.S.A. 2017 Supp. 8-1001(k)(5)—is

3

unconstitutional. Specifically, Walker argues that the statute requires a driver to give up his Fourth and Fifth Amendment rights under the United States Constitution in order to preserve the privilege to drive.

*Substantial Competent Evidence*

Walker argues that "[v]ideo evidence presented to the district court showed that [he] did not exhibit any indication of impairment in the operation of his vehicle. The district court ignored this evidence in [its] analysis of the totality of the circumstances." Although Walker phrases this issue in terms of insufficiency of the evidence, we review a district court's decision in a driver's license suspension case under a substantial competent evidence standard of review. See *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Substantial competent evidence is evidence that a reasonable person could accept as adequate to support a conclusion. In determining whether the district court's findings of fact are supported by substantial competent evidence, we do not reweigh the evidence, assess the credibility of witnesses, or resolve evidentiary conflicts. *State v. Boggess*, 308 Kan. 821, 825, 425 P.3d 324 (2018).

In the DC-27 form prepared by Deputy Atzenweiler and served on Walker, the reason for the traffic stop was articulated. Moreover, the DC-27 form indicated that Walker had bloodshot eyes and an odor of alcohol on his breath. However, Walker asserts the video recording of the traffic stop demonstrates that he was not impaired because "his eyes were not visibly bloodshot," "his speech was clear," and his "physical infirmities contributed to his inability to perform standardized field sobriety tests." In addition, Walker claims that the district court failed to take into consideration his lack of additional driving infractions after the initial improper turn and his denial of alcohol consumption on the night of his arrest.

4

Kansas courts evaluate "reasonable grounds" to believe a driver operated a motor vehicle under the influence of alcohol by looking to probable cause standards. "'Probable cause is determined by evaluating the totality of the circumstances,' giving consideration to 'the information and fair inferences therefrom, known to the officer at the time of arrest,' with 'no rigid application of factors.'" *Swank*, 294 Kan. at 881. "Probable cause exists where the officer's knowledge of the surrounding facts and circumstances creates a reasonable belief that a defendant committed a specific crime. Probable cause does not require an officer have evidence of every element of the crime." *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, Syl. ¶ 1, 242 P.3d 1179 (2010).

A review of the record reveals that the district court conducted a de novo review of the evidence regarding Walker's license suspension. In so doing, the district court properly noted that Walker had the burden—under K.S.A. 2017 Supp. 8-1020(q)—of showing that the agency decision must be set aside. See *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 121-22, 200 P.3d 496 (2009). The district court reviewed the statements by Deputy Atzenweiler in the DC-27 form that he smelled alcohol on Walker's breath, had bloodshot eyes, and exhibited poor balance. The district court also noted Walker's performance on the field sobriety tests.

Significantly, the district judge watched the video recording of the traffic stop and could see for herself what had occurred. After doing so, the district judge rejected each of Walker's evidentiary arguments regarding his alleged lack of impairment. As for those arguments—which are identical to those that Walker now makes on appeal—the district court made the following factual conclusions:

> "The recording device was activated after Deputy Atzenweiler observed Walker's
> improper turn out of the bar. The alleged improper turn is not depicted on the DVD, thus
> the DVD does not contradict [the] statement in the DC-27. The recording device does not
> record odors, thus the DVD does not contradict the statement in the DC-27 about odor of

alcohol. Further, Deputy Atzenweiler states on the video that he smelled alcohol on Walker.

"Walker says the DVD does not show that he had bloodshot eyes. This cannot be discerned one way or the other from the DVD, thus it does not contradict the statement in the DC-27.

"Walker argues that he did not fail field sobriety tests and any lack of balance or coordination can be explained by his prior injuries, which he described to the deputies on the DVD. Walker stated on the video that he had broken his right leg four times in the past and 'blew his knee out.' He agreed, however, that he was able to stand on his legs. Walker claimed in his brief that the video shows him walking with a limp, but it does not. The video demonstrates that Walker did not stagger or stumble when he walked."

Finally, after repeating its prior findings regarding the failed sobriety tests, the district court determined that there were reasonable grounds to request a preliminary breath test and to place Walker under arrest after he refused to take the test.

On appeal, Walker seeks to have us reweigh the evidence presented to the district court. Yet our review is limited to determining whether substantial competent evidence supports the district court's conclusions. *Boggess*, 308 Kan. at 825; see also *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1220, 442 P.3d 1038 (2019) (appellate courts should not reevaluate evidence of impairment but should apply the more deferential substantial competent evidence review). "In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it." *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017).

Based on our review of the record, we find that the district court carefully considered all the evidence presented by the parties and made factual findings that are supported by the record. We also find that the district court's findings are reasonable in light of the video recording of the traffic stop. Although some may interpret the evidence

differently, we conclude that the district court's findings are based on substantial competent evidence as well as on the reasonable inferences that may be drawn from that evidence.

Notably, the district court found that the traffic stop was valid; that Walker failed to produce registration for the vehicle he was driving; and that Walker showed a lack of balance during the field sobriety tests. Further, the district court found that Deputy Atzenweiler smelled alcohol on Walker's breath and observed that his eyes were bloodshot. In addition, the district court took into consideration the fact that Walker refused to take a preliminary breath test and noted that a law enforcement officer "may draw a negative inference from a driver's refusal to take a preliminary breath test." See *Forrest v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 121, 128, 425 P.3d 624 (2018).

In summary, we find that the district court carefully analyzed the evidence presented by the parties and reached a reasonable conclusion based on that evidence. We also find that the district court's decision that there was reasonable grounds or probable cause—based on the totality of the circumstances—for Deputy Atzenweiler to request that Walker submit to a preliminary breath test. Accordingly, we conclude that the district court did not err in determining that Deputy Atzenweiler had reasonable grounds to request a preliminary breath alcohol test.

*Constitutionality of K.S.A. 2019 Supp. 8-1001(c)(2)*

Next, Walker challenges the constitutionality of K.S.A. 2019 Supp. 8-1001(c)(2)—formerly K.S.A. 2017 Supp. 8-1001(k)(5)—which provides that "[w]hen requesting a test or tests of breath or other bodily substance other than blood or urine, under this section, the person shall be given oral and written notice that . . . if the person refuses to submit to and complete the test or tests, the person's driving privileges will be suspended for a period of one year."

The constitutionality of a statute is a matter of law subject to unlimited review. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 789, 189 P.3d 508 (2008). If possible, we are to endeavor to find a reasonable way in which to construe a statute as constitutionally valid. See *KNEA v. State*, 305 Kan. 739, 749-50, 387 P.3d 795 (2017). The burden is on the party asserting unconstitutionality. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 462, 447 P.3d 959 (2019).

In *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2186, 195 L. Ed. 2d 560 (2016), the United States Supreme Court held that the Fourth Amendment prohibits warrantless blood tests pursuant to DUI arrests and that drivers cannot be deemed to have consented to such a test based on a threat of criminal penalty. Even so, *Birchfield* also held that the Fourth Amendment permits warrantless breath tests in some cases. 136 S. Ct. at 2184. Significantly, in *Birchfield*, the United States Supreme Court noted that "[o]ur prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply" and found that "nothing we say here should be read to cast doubt on them." 136 S. Ct. at 2185.

Similarly, in *State v. Ryce*, 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce* II), the Kansas Supreme Court declared K.S.A. 2016 Supp. 8-1025's criminalization of a driver's refusal to submit to a blood alcohol content testing to be unconstitutional under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. Nevertheless, our Supreme Court has not invalidated the entire implied consent statutory scheme. Moreover, we do not anticipate that it will do so.

Instead, the court has held that "compulsory testing for alcohol or drugs through drivers' implied . . . consent does not violate the Constitution, it is reasonable in light of the State's compelling interest in safety on the public roads." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 (2008), *overruled on other grounds by City of*

8

*Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015). See also *State v. Arellano*, No. 116,448, 2018 WL 1352571, at *3-4 (Kan. App. 2018) (unpublished opinion) (holding that evidence of a breath test does not implicate Fourth or Fifth Amendment rights); *Rome v. Kansas Dept. of Revenue*, No. 117,606, 2018 WL 2994304, at *4 (Kan. App. 2018) (unpublished opinion) (holding that the Fourth Amendment's exclusionary rule does not apply in administrative driver's license suspension cases).

Of course, we are "duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position." *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015); see *McCullough v. Wilson*, 308 Kan. 1025, 1032, 426 P.3d 494 (2018). Because we find no indication of such a departure, Walker's argument fails. We, therefore, conclude that the KDOR's decision to suspend Walker's driver's license for his failure to submit to a breath alcohol test was justified under the constitutionally valid statutory provision in K.S.A. 2019 Supp. 8-1001(c)(2).

Affirmed.